**CARRIER CORPORATION,**
a corporation,

v.

**FURNESS, WITHY & CO.,** Limited, a corporation; **Philadelphia Ceiling & Steve-doring Company,** a corporation; and **Reading Company,** a corporation.

**Civ. A. No. 13723.**

United States District Court
E. D. Pennsylvania.

Feb. 9, 1955.

As Amended Feb. 17, 1955.

Otto Wolff, Jr., Lewis, Wolff & Gourlay, Philadelphia, Pa., for plaintiff.

T. J. Mahoney, Jr., Krusen, Evans & Shaw, Philadelphia, Pa., for Furness, Withy & Co. and Philadelphia Ceiling & Stevedoring Co.

Thomas Raeburn White, Jr., White, Williams & Scott, Philadelphia, Pa., for Reading Co.

KIRKPATRICK, Chief Judge.

This is an action by the shipper (who was also the consignee) of 151 bundles of steel sheets for damage to the shipment occurring in the course of its transportation by the Reading Company from Philadelphia to Syracuse, New York.

The steel sheets, purchased by the plaintiff in France, arrived at Philadelphia on the Domfront on May 18, 1951, consigned to the order of "Chase National Bank of New York, notify Maron shipping agency." Maron was the agent of the plaintiff and, acting on behalf of the plaintiff, it engaged F. B. Vandegrift & Co. in Philadelphia as sub-agent to pay the customs charges and arrange for forwarding of the shipment to Syracuse.

Between May 18 and 29, the Philadelphia Ceiling & Stevedoring Company which had been employed by Furness, Withy & Co., Ltd., agents for the French ship, unloaded the steel sheets into five gondola cars, delivered by the Reading Co. to the ship's side. Both Furness, Withy & Co. and the Stevedoring Company were acting solely for the ship and neither had any communication with the plaintiff or with Maron and Vandegrift, its agents, and neither received any instructions relating to the loading of the shipment. No party involved here other than the Stevedoring Company had anything to do with the loading or the method of placing the steel in the cars.

Without going into unnecessary details, I find that so far as the Stevedoring Company is concerned there was no negligence in connection with the loading of the bundles of steel. I also find that, although properly and safely placed in the cars, they could not have been safely transported without blocking, bracing and chocking. In the absence of such precautions, the rail transportation of the load would have been attended with risk of damage without regard to how the piles of bundles were placed, whether lengthwise or crosswise in the cars. So far as the record shows, nobody connected with the suit requested anybody else to have the load blocked, and, in fact, nobody even thought of doing it.

The shipment was not inspected by the Reading Company at any time either before or after it was loaded into the gondola cars.

On May 18 or 19, while the Domfront was being unloaded, Vandegrift forwarded to the Reading Company a bill of lading for the steel, prepared by Maron, without covering letter. On May 29, the Reading's clerk at the pier completed it by putting in the gross, tare and the net weights of the cars and marked the bill of lading "Shippers load and count by Phila. Ceiling & Stevedore Co."

I find as a fact that the shipment had been delivered to the Railroad Company

in good condition and that on arrival at Syracuse it was badly damaged as a result of the shifting of the contents of the cars caused by the movements of the train during transit.

■ The Reading Company seeks to meet the burden imposed upon it by its acceptance of the goods in good condition and their delivery, damaged, by invoking the notation placed by its agent upon the bill of lading. The Act of August 29, 1916, provides that where the carrier has inserted " 'Shipper's weight, load, and count' " or other words of like import, it shall not be liable for damages caused by improper loading. But it also provides that this exemption shall apply "if such statement be true", 49 U.S.C.A. § 101. In the present case the statement on the bill, indicating that the loading had been done by the shipper, was untrue and was so upon its face. Of course, the Railroad Company knew that the Stevedoring Company was not the shipper—the bill so indicated—and it had no reason to believe that it was acting as the shipper's agent, which it was not.

■■ This brings us to the question whether the Railroad Company has met its burden, by showing as it did that the damage would not have occurred if the shipment had been properly blocked, etc. The difficulty with this position is that the Railroad Company, without inspection, accepted a shipment of a kind which, unless extra precautions were taken, was almost certain to be damaged in the course of transportation—a fact which certainly would be plainly evident to a carrier like the Reading. The Railroad Company could have refused the shipment and probably would have if it had inspected it, because the unsecured loading was in violation of its own rules. Had it done so, the plaintiff would have had to incur the extra expense of having the shipment blocked in order to insure its safe carriage. As it was, the shipper did not have any knowledge of the way in which the shipment had been loaded and protected. I cannot spell out any "duty" on the part of the shipper to have this shipment blocked or otherwise se-cured when it did not do the loading and had no notice that such precautions were necessary. It tendered goods in good condition to the Railroad Company, which did have a duty to transport them safely and which accepted them without advising the shipper in any way that there was anything unsafe about the way they were loaded. The Railroad Company is, therefore, liable to the shipper for damages.

■ As to the stevedore, I am of the opinion that, in the absence of any instructions as to the method of loading, it had no duty beyond placing the steel bundles safely and properly in the cars, nor is there any custom or anything in the usual method of doing a stevedore's business which would impose a duty to brace and block upon it.

Judgment may be entered in favor of Furness, Withy & Co., Ltd., and Philadelphia Ceiling & Stevedoring Company.

Judgment may also be entered in favor of Carrier Corporation against the Reading Company in an amount to be determined later.